NO. 14-1233

---

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH DISTRICT

---

### PETER S. VINAL,

**Plaintiff-Appellant**

v.

### SUNTRUST MORTGAGE, INC.,

**Defendant-Appellee**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
## No. 7:13-CV-159-D

---

## BRIEF OF PLAINTIFF-APPELLANT PETER S. VINAL

---

JAMES W. LEA, III
THE LEA/SCHULTZ LAW FIRM
ATTORNEY FOR APPELLANT
1131-B MILITARY CUTOFF RD.
WILMINGTON, NC 28405
T (910) 239-5990
F (910) 239-5992

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A. Nature of the Case and Course of Proceedings . . . . . . . . . . . . . . . . . . 3

    B. Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF THE ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B. Discussions of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.    The district court erred in dismissed Vinal's claim for constructive trust against SunTrust because Vinal pled sufficient factual allegations to support his claim in conformance with the pleading requirements of *Iqbal and Twombley* . . . . . . . . . . . . . . . . . . . . . . . 10

    II.   The district court erred in dismissing Vinal's claims for unfair or deceptive trade practices against SunTrust because Vinal pled sufficient factual allegations to support his claim in conformance with the pleading requirements of *Iqbal* and *Twombley* . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## CASES

*Abbitt v. Gregory,*
 201 N.C. 577, 160 S.E. 896 (1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ashcroft v. Iqbal,*
 556 U.S. 662, 678 (U.S. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*American Model Home Corp. v. Resource Mortg. Capital, Inc.,*
 1999 U.S. App. LEXIS 2849, 13 (4th Cir. Va. Feb. 24, 1999) . . . . . . . . . 15

*Barger v. McCoy Hillard & Parks,*
 346 N.C. 650, 666, 488 S.E.2d 215 (1997). . . . . . . . . . . . . . . . . . 13, 16, 17

*Bank of Red Bay v. King,*
 482 So.2d 274 (Ala. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544, 570 (U.S. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Branch Banking & Trust Co. v. Thompson,*
 107 N.C. App. 53, 60-61, 418 S.E.2d 694, 699 (1992). . . . . . . . . . . . . . . 13

*Broussard v. Meineke Discount Muffler Shops, Inc.,*
 155 F.3d 331, 348 (4th Cir. N.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Carlson v. Branch Banking and Trust Co.,*
 123 N.C. App. 306, 316, 473 S.E.2d 631, 637-38 (1996) . . . . . . . . . . . . 19

*Curl v. Key,*
 311 N.C. 259, 316 S.E.2d 272 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Dallaire v. Bank of America N.A.,*
 738 S.E.2d 731 (N.C. Ct. App. 2012), *rev. granted,* 747 S.E.2d 535
 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Dalton v. Camp,*
    353 N.C. 647, 651-52, 548 S.E.2d 704 (2001) . . . . . . . . . . . . . . . . . . . 11, 19

*Denison State Bank v. Madeira,*
    640 P.2d 1235 (Kan. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Devlin v. Wells Fargo Bank, N.A.,*
    2014 U.S. Dist. LEXIS 37397, 22, (W.D.N.C. Mar. 21, 2014) . . . . . . . . . 11

*Drinkard v. Walnut Street Securities, Inc.,*
    2009 U.S. Dist. LEXIS 44016 (W.D.N.C. May 11, 2009) . . . . . . . . . . . . 14

*Edwards v. City of Goldsboro,*
    178 F.3d 231, 243-44 (4th Cir. N.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Erickson v. Pardus,*
    551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed. 2d 1081 (U.S. 2007) . . . . . . . 10

*Harrington Manufacturing Co. v. Powell Manufacturing Co.,*
    38 N.C. App. 393, 398, 248 S.Ed.2d 739, 744 (1978) . . . . . . . . . . . . . . . 20

*Harrison v. Westinghouse Savannah River Co.,*
    176 F.3d 776, 784 (4th Cir. S.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hooper v. Liberty Mut. Ins. Co.,*
    84 N.C. App. 549, 551, 353 S.Ed.2d 248, 250 (1987) . . . . . . . . . . . . . . . 20

*James R. Carcano v. JBSS, LLC,*
    200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (N.C. Ct. App. 2009) . . . . . . 19

*Keener Lumber Co. v. Perry,*
    149 N.C. App. 19, 28, 560 S.E.2d 817, 823 (N.C. Ct. App. 2002) . . . . . . 10

*Klein v. First Edina Natl Bank,*
    196 N.W.2d 619 (Minn. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*LFM Real Estate Ventures, LLC v. SunTrust Bank,*
    2012 U.S. Dist. LEXIS 175439, 29 (W.D.N.C. De. 7, 2012) . . . . . . . . . . 20

*Marshall v. Miller,*
    302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) . . . . . . . . . . . . . . . . . . . 20

*McCauley v. Home Loan Inv. Bank,*
    710 F.3d 551, 559 (4th Cir. W. Va 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McIreney v. Pinehurt Area Realty, Inc.,*
    162 N.C. App. 285, 289, 590 S.E.2d 313, 316-17 (N.C. Ct. App. 2004) . . 19

*Miller v. Bank,*
    234 N.C. 309, 316, 67 S.E.2d 362 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.,*
    825 F.Supp.2d 664, 700 (M.D.N.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Robinson v. Am. Honda Motor Co.,*
    551 F.3d 218, 222 (4th Cir. Md. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*S. Atl. P'ship of Tenn. V. Riese,*
    284 F.3d 518, 533, 2002 U.S. App. LEXIS 4747, 30
    (4th Circ. N.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

*S. Atl. Ltd. P'ship of Tenn. V. Riese,*
    2004 U.S. App. LEXIS 1434 (4th Cir. N.C., Jan. 30, 2004) . . . . . . . . . . . 11

*Schatz v. Rosenberg,*
    943 F.2d 485, 489 (4th Cir. Md. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Simmons v. Jenkins,*
    750 P.2d 1067, 1070 (Mont. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Smith v. GMAC Mortg. Corp.,*
    2007 U.S. Dist. LEXIS 66001 (W.D.N.C. Sept. 5, 2007) . . . . . . . . . . . . 15

*S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC,*
    189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008) . . . . . . . . . . . . . . . 11

*Teeling v. Indiana National Bank,*
    436 N.E.2d 855 (Ind. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Terry v. Terry,*
　　302 N.C. 77, 85, 273 S.E.2d 674, 678-79 (1981) . . . . . . . . . . . . . . . . . . . . . 12

*Walters v. McMahen,*
　　684 F.3d 435, 439 (4th Cir. Md. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*WNC Holdings, LLC v. Alliance Bank & Trust Co.,*
　　2012 NCBC 50, 2012 NCBC LEXIS 52 (N.C. Super. Ct. 2012) . . . . . . . . 10

## STATUTES

N.C.G.S. §75 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## RULES

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

NO. 14-1233

UNITED STATES COURT OF APPEALS
FOR THE FOURTH DISTRICT

PETER S. VINAL,

Plaintiff-Appellant

v.

SUNTRUST MORTGAGE, INC.,

Defendant-Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-159-D

BRIEF OF PLAINTIFF-APPELLANT PETER S. VINAL

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The United States District Court had jurisdiction over this case based on diversity jurisdiction. 28 U.S.C. § 1332. Plaintiff is a resident of North Carolina and Defendant SunTrust Mortgage, Inc. is incorporated and has its principal place of business in a state other than North Carolina.

United States District Court Judge James C. Dever III entered a final order on February 12, 2014 disposing of all claims against Defendant SunTrust and dismissing SunTrust as a defendant.

This Court has jurisdiction over the appeal pursuant to 28 U.S. C. §1291, which grants jurisdiction to the United States Court of Appeals from all final decisions of the district courts of the United States. The district court's order is a final decision with the meaning of 28 U.S. C. §1291.

## STATEMENT OF THE ISSUES

I.    Whether Vinal has plausibly pled special circumstances that created a relationship of trust and confidence between himself and SunTrust and a breach of that duty on allegations that SunTrust is an institutional lender with whom he had a five year banking relationship that included nine mortgage loans on five different properties, that he obtained each of the loans from SunTrust through a Fannie Mae program designed for up to ten properties per investor, that in 2009 the Fannie Mae guidelines changed, permitting the refinance of only four properties per investor, that one of the loans Vinal used to purchase an investment property under the original Fannie Mae guidelines matured on September 1, 2008, that SunTrust did not tell Vinal that he should refinance in 2008 before the Fannie Mae guideline change went into effect, that Vinal continued to make, and SunTrust continued to accept, monthly loan payments on the matured loan until March of 2009, that in March of 2009 SunTrust demanded payment of the matured loan, in excess of $691,000, that Vinal informed SunTrust that he could not pay and needed to refinance, that he sought advice and counsel from SunTrust, and from no one else, to help him refinance or modify his loans and avoid foreclosure, that SunTrust instructed him to deliberately default on his mortgages by skipping three payments, and that by missing three payments he would become eligible for several modification or refinancing programs, that SunTrust advised him that the deliberate default would not be reported to any credit bureau, that Vinal followed the advice and counsel of SunTrust and deliberately defaulted on his loans, all but one of which were in good standing, that SunTrust did report the missed payments to the credit bureaus, that as a result of the reporting of the missed payments, Vinal's credit score dropped severely, he became in default on all of his loans, that SunTrust directed the change of locks on all of the properties while they were still owned by Vinal, and directed the change of locks twice on one of the properties while it was occupied by a bona fide tenant under a written lease, that SunTrust failed to accept short sale offers on two of the properties for amounts greater than the amounts SunTrust ultimately bid on them at the foreclosure sales, and that Vinal ultimately lost all of his

2

properties to foreclosure?

II.    Whether Vinal has plausibly pled an Unfair and Deceptive Trade
       Practices Act claim against SunTrust on the allegations set forth in the
       Complaint and as summarized above?

**STATEMENT OF THE CASE**

**A. Nature of the Case and Course of Proceedings**

On June 26, 2013, Peter S. Vinal ("Vinal") sued SunTrust Mortgage, Inc. ("SunTrust"), two SunTrust employees, the Federal National Mortgage Association ("Fannie Mae"), and Safeguard Properties, LLC ("Safeguard") in New Hanover County Superior Court. See Compl. [JA-10] 1-19. On July 31, 2013, SunTrust removed the case to federal court based on diversity jurisdiction. See [JA-7]. Vinal voluntarily dropped all of his claims against Fannie Mae and the SunTrust employees, see [JA-378] and proceeded with a claim for trespass against Safeguard and claims for constructive fraud, unfair or deceptive trade practices, tortious interference with a contract and trespass against SunTrust. Id. On August 30, 2013, SunTrust moved to dismiss the claims against it under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. [JA-366].

On February 14, 2014, the district court issued an Order dismissing Vinal's claims against SunTrust for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and dismissing SunTrust as a defendant. [JA-380].

Vinal filed a timely notice of appeal on March 14, 2014. [JA-390].

3

**B. Statement of the Facts**

Vinal is a real estate broker and investor in Wilmington, North Carolina, Compl. [JA-10] ¶¶ 6-77, who took out nine interest-only loans from SunTrust between 2005 and 2007 to finance the purchase of five properties in Wilmington, North Carolina. Compl. ¶¶ 6, 57. The properties were purchased and the loans were originated in connection with a Fannie Mae program offered by SunTrust designed for up to ten properties per investor. Id. ¶ 6.

Eight of the loans were long-term mortgages with maturity dates between 2035 and 2037. See id., Exs. B-E. The loan with account number ending 2155 ("Loan 2155") matured on September 1, 2008, id., Compl. ¶ 50, Ex. A ¶ 3(A), but SunTrust did not call the loan when it matured. Vinal continued to make and SunTrust continued to accept monthly interest-only payments for seven months after Loan 2155 matured. Id. ¶ 39. In March of 2009, SunTrust called Vinal to a meeting to discuss payment in full of Loan 2155. Id. ¶ 8. At the meeting SunTrust advised Vinal that Fannie Mae guidelines had changed in early 2009 to permit financing of only four properties per investor rather than ten, and that as a result of the policy change, Vinal was not eligible to refinance. Id. ¶¶ 8, 39, 40. Vinal communicated to SunTrust that he did not have the financial resources to pay off Loan 2155, id. ¶¶ 8, 39, the balance of which was in excess of $691,000, id. ¶ 39, and keep up the monthly payments on his other eight loans. Id. ¶¶ 8, 39, 40.

In response, a SunTrust employee gave Vinal the toll-free telephone number to SunTrust's loss mitigation department. Id. ¶ 40. When Vinal contacted

4

SunTrust's loss mitigation department in March of 2009, he was instructed to default on his monthly payments for three months in order to take advantage of certain mitigation programs. Id. ¶¶ 9, 41. SunTrust told Vinal that SunTrust would not report Vinal's defaulted mortgage payments to any credit bureau. Id. ¶ 47.

In reliance on SunTrust's instruction, Vinal defaulted on his monthly mortgage payments for all nine loans beginning in June of 2009. Id. ¶¶ 10, 42. As a result, Vinal's credit score, which had previously been above 700 and reflected no missed or late loan payments, id. and Ex. F, Pg. 1, dropped severely. Id. ¶¶ 10, 42. On July 21, 2009, Vinal attempted to pay SunTrust $4,206.07 on Loan 2155 to make up the June and July payments and salvage his credit rating, but SunTrust refused the payment and avoided communication with Vinal. Id. ¶¶ 43, 44.

In late 2009, with SunTrust's knowledge and cooperation, Vinal listed several of his properties for sale at prices less than the loan payoff amounts in an effort to obtain short sales and avoid foreclosure. Id. ¶ 11. Beginning in February 2010, Vinal received short sale offers to purchase three of his properties and conveyed the offers to SunTrust's short sale department for review and approval. Id. SunTrust employees lost important documents, shuffled Vinal's files among different employees, delayed and obstructed the short sale process, id. ¶ 12, and rejected all short sale offers. Id. ¶ 14. SunTrust's handling of the short sale process resulted in Vinal losing an opportunity to negotiate a payment of a second mortgage held by another bank, which bank filed a collection action against Vinal for the balanced owed, an amount in excess of $112,000. Id.

5

In May of 2010 and again in June of 2010, while Vinal still owned the properties, SunTrust hired a third party to change the locks on Vinal's properties, including one, 1536 S. 41st Street, that was then-occupied by a bona fide tenant under a written lease. Id. ¶ 28, Ex. G, pp 1-10. SunTrust ultimately foreclosed on all five of Vinal's properties between July and October of 2010, see Defendants Irvings's and Bagby's Memorandum of Law in Support of Motion to Dismiss, [JA-289], Ex. 3, pp 1-5 (incorporated by SunTrust in its Memorandum of Law in Support of Motion to Dismiss [JA-289]).

One of the properties was sold at foreclosure in October 2010 for $184,183, id. p 4, a price below the short sale offer Vinal presented to SunTrust in February of 2010 for $208,000. Id., Ex. 1, pp 11-21. Another of the properties was sold at foreclosure in October of 2010 for $586,500, id., Ex. 3, p 3, a price below the short sale offer Vinal presented to SunTrust in January of 2010 for $595,000. Id., Ex. 1, pp 33-43.

## SUMMARY OF THE ARGUMENTS

The factual allegations of Vinal's complaint exceed the plausibility standard established for federal pleadings. Vinal alleges specific facts and special circumstances that created a relationship of trust and confidence between himself and SunTrust and through which SunTrust exercised it domination and influence over Vinal. Vinal has also pled sufficient allegations that constitute the egregious conduct required to support a claim for unfair or deceptive trade practices.

Constructive fraud differs from actual fraud, as it is based on a confidential relationship rather than a specific misrepresentation, and the particularity requirement for pleading constructive fraud is less stringent than actual fraud. Constructive fraud claim requires allegations of the existence of a fiduciary duty and breach of that duty. It does not require allegations of intent to deceive.

In North Carolina a fiduciary duty exists where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence and it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.

Some fiduciary relationships arise out of legal relationships such as attorney and client, broker and client, principal and agent, and others exist as a fact, in which there is a confidence reposed on one side, and the resulting superiority and influence on the other. North Carolina's definition of fiduciary duty does not

7

require that the confidence reposed by one person was *actually accepted* by the other – only that it resulted in domination and influence on the other. This distinction is important because fiduciary duty is not defined the same in all states, even within the 4th Circuit. In West Virginia, for example, establishment of a fiduciary relationship requires that the one in whom confidence is reposed actually accepts the confidence. We have no such requirement in North Carolina.

Both the United States District Court and the North Carolina Court of Appeals have recognized that a fiduciary relationship between a creditor and debtor can exist in fact, given the proper circumstances. Vinal has specifically alleged facts of special circumstances wherein SunTrust undertook to provide Vinal with service beyond that inherent in the creditor-debtor relationship. SunTrust was not obligated to give counsel, advice and instructions to Vinal outside the bounds of the contractual agreement between the parties, but since it chose do so, it had a duty to do so reasonably and with due care.

Vinal has pled specific factual allegations to support his claim of constructive fraud, which distinguishes this case from others that have been dismissed because they rely on conclusory allegations. The standard of review for a Rule 12(b)(6) dismissal is *de novo*, and the Court must assume the truth of all facts alleged in the complaint and any facts that can be proven, consistent with the complaint.

Vinal has also pled sufficiently pled the elements to support a claim against SunTrust for unfair or deceptive trade practices. The Complaint asserts that

8

SunTrust failed to alert Vinal to changes in Fannie Mae's guidelines that affected his ability to refinance, instructed him to default on his mortgages by skipping three payments at a time when he had never missed a payment nor made a late payment, represented that it would not report these missed payments and defaults to the credit bureaus, then reneged on that promise, causing Vinal to be ineligible for other refinance programs, changed locks on properties Vinal owned, including two that were occupied by bona fide tenants, and refused to approve short-sale offers that would have mitigated Vinal's damages.

The Complaint includes the names of specific employees at SunTrust, the approximate dates of the conduct, and enough information to put SunTrust on notice of Vinal's contentions. The Complaint contains more than enough allegations of SunTrust's egregious conduct and words and conduct that had the tendency or capacity to deceive to survive a Rule 12(b)(6) motion to dismiss.

## ARGUMENT

### A.    Standard of Review

The standard of review for dismissal pursuant to Rule 12(b)(6) is *de novo*. *Robinson v. Am. Honda Motor Co.,* 551 F.3d 218, 222 (4th Cir. Md. 2009) citing *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. Md. 1991). The Court must determine whether the factual allegations of the complaint, accepted as true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (U.S. 2007). A claim is plausible on its face if the factual allegations rise above the speculative

9

level, *Twombly*, 550 U.S. at 555, and "advance the plaintiff's claim across the line from conceivable to plausible." *Walters v. McMahen*, 684 F.3d 435, 439 (4ᵗʰ Cir. Md. 2012).

To survive a 12(b)(6) motion, a plaintiff "need not forecast evidence sufficient to prove the elements of the claim." Id. In reviewing the complaint for sufficiency of allegations, the court should not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4ᵗʰ Cir. N.C. 1999).

In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed. 2d 1081 (U.S. 2007)

**B.     Discussion of the Issues**

**I.    The district court erred in dismissing Vinal's claim for constructive trust against SunTrust because Vinal pled sufficient factual allegations to support his claim in conformance with the pleading requirements of Iqbal and Twombley.**

A constructive fraud claim requires allegations of the existence of a fiduciary duty and breach of that duty. *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 28, 560 S.E.2d 817, 823 (N.C. Ct. App. 2002), and a breach of fiduciary duty raises a presumption of constructive fraud. *WNC Holdings, LLC v. Alliance Bank & Trust Co.*, 2012 NCBC 50, 2012 NCBC LEXIS 53 (N.C. Super. Ct. 2012). A fiduciary duty arises only when there is a fiduciary relationship between the parties. Pursuant

10

to North Carolina law, a fiduciary duty exists where:

> 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . ., [and] 'it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.'

*Dalton v. Camp*, 353 N.C. 647, 651-52, 548 S.E.2d 704 (2001) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 160 S.E. 896 (1931). Some fiduciary relationships arise out of legal relationships such as attorney and client, broker and client, principal and agent, *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008), and others exist "as a fact, in which there is a confidence reposed on one side, and the resulting superiority and influence on the other." Id. "In order to allow the imposition of fiduciary duties where they are found justified, the North Carolina courts have historically declined to adopt a rigid definition of a fiduciary relationship." *S. Atl. P'ship of Tenn. v. Riese*, 284 F.3d 518, 533, 2002 U.S. App. LEXIS 4747, 30 (4th Cir. N.C. 2002), *remanded by S. Atl. Ltd. P'ship of Tenn. v. Riese*, 2004 U.S. App. LEXIS 1434 (4th Cir. N.C., Jan. 30, 2004)

A party alleging fraud or mistake is required to "state with particularity the circumstances constituting fraud or mistake," Fed.R. Civ. P. 9(b), and plead "the time, place, and consents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Devlin v. Wells Fargo Bank, N.A.,* 2014 U.S. Dist. LEXIS 37397, 22, (W.D.N.C. Mar. 21,

11

2014), quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. S.C. 1999). The purpose of Rule 9(b) is to give defendants fair notice of the claims against them and the factual grounds for the claims, to prevent frivolous suits, to prevent fraud actions where all the facts are learned only after discovery, and to protect defendants' goodwill and reputation. *McCauley v. Home Loan Inv. Bank*, 710 F.3d 551, 559 (4th Cir. W. Va. 2013). Accordingly,

> [t]he Court should be hesitant to dismiss a complaint under Rule 9(b) if the Court is 'satisfied (1) that the defendant has been made aware of the particular circumstances for which it will have to prepare a defense at trial, and (2) the plaintiff has substantial prediscovery evidence of those facts.'

*Devlin*, 2014 U.S. Dist. LEXIS at 24 (quoting *Harrison*, 176 F.3d at 784).

Constructive fraud differs from actual fraud as it is based on a confidential relationship rather than a specific misrepresentation. *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678-79 (1981). "The very nature of constructive fraud defies specific and concise allegations and the particularity requirement may be met by alleging facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff. Id., 302 N.C. at 85, 273 S.E.2d at 679. The intent to deceive is not an essential element to a claim for breach of constructive fraud, but it is nevertheless fraud which rests upon the presumption arising from the breach of fiduciary obligations, *Miller v. Bank*, 234 N.C. 309, 316, 67 S.E.2d 362 (1951), and requires the parties to disclose all material facts. *Curl v. Key*, 311 N.C. 259, 316

12

S.E.2d 272 (1984). "Implicit in the requirement that a defendant '[take] advantage of his position of trust to the hurt of plaintiff' is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215 (1997).

Although to date it has been uncommon for a court to extend a fiduciary relationship to the debtor-creditor relationship, the North Carolina Court of Appeals has acknowledged since at least 1992 that special circumstances can give rise to such a special confidence.

> [A]n ordinary debtor-creditor relationship generally does not give rise to such a special confidence: [t]he mere existence of a debtor-creditor relationship between [the parties does] not create a fiduciary relationship. *This is not to say, however, that a bank-customer relationship will never give rise to a fiduciary relationship given the proper circumstances.* Rather, parties to a contract do not thereby become each other's fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the U.C.C.

*Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 60-61, 418 S.E.2d 694, 699 (1992) (citations omitted) (*emphasis added*).

Both the United States District Court and the North Carolina Court of Appeals have recognized that a fiduciary relationship between a creditor and debtor can exist in fact, given the proper circumstances. In *Dallaire v. Bank of America, N.A.,* 738 S.E.2d 731 (N.C. Ct. App. 2012), *rev. granted*, 747 S.E.2d 535 (2013), plaintiffs alleged facts in support of an argument that special circumstances existed to give rise to a fiduciary relationship between borrower and lender. Plaintiffs

13

informed Bank of America that a 2005 Chapter 7 bankruptcy discharge relieved them of their personal liability under three mortgage liens against the property, and that all three liens, the first two of which were held by Bank of America, remained valid against the property. Id. Plaintiffs alleged that Bank of America assured them that a new refinancing loan would receive first priority status and advised them to increase the amount of the loan to pay off two car notes. Id. at 733. Plaintiffs learned three years later when they attempted to sell their home that Bank of America was not in first lien position as it had represented, and that the other prior liens remained. Id.

The district court, on review of the trial court's entry of summary judgment for Bank of America, found that a question of fact existed as to whether the circumstances gave rise to a fiduciary relationship. Id. 738 S.E.2d. at 735. In a footnote, the court stated

> Specifically, a question of fact exists as to whether or not Defendant sought to give legal advice to Plaintiffs. In either event, *when a financial institution undertakes to provide a customer with service beyond that inherent in the creditor-debtor relationship, it must do so reasonably and with due care.*

Id., footnote 5 (emphasis added). Other cased based on North Carolina law have permitted plaintiffs to go forward with claims of breach of fiduciary duty and/or constructive fraud in the context of a debtor-creditor relationship. See *Drinkard v. Walnut Street Securities, Inc.*, 2009 U.S Dist. LEXIS 44016 (W.D.N.C. May 11, 2009) (holding that plaintiff's complaint alleged sufficient facts to support a claim for constructive fraud on facts that took the relationship outside the ordinary

14

debtor-creditor context and within the general rule of *Abbit, supra*); *Smith v. GMAC Mortg. Corp.*, 2007 U.S. Dist. LEXIS 66001 (W.D.N.C. Sept. 5, 2007) (plaintiff alleged sufficient facts to show that a fiduciary relationship existed between her and bank where she alleged that she placed her trust and confidence in bank); *WNC Holdings, supra*, 2012 NCBC at 53 (denying defendant bank's Rule 12(b)(6) motion to dismiss breach of fiduciary duty and constructive fraud claims on allegations by plaintiff that bank acted as a financial and development advisor and completed feasibility pro forma statements on behalf of plaintiffs).

Courts in other jurisdictions have also found that circumstances can warrant a fiduciary duty from a bank to a borrower. See *American Model Home Corp. v. Resource Mortg. Capital, Inc.*, 1999 U.S. App. LEXIS 2849, 13 (4th Cir. Va. Feb. 24, 1999) (applying California law, "a fiduciary relationship arises in this instance only under special circumstances, such as when there is a long-term relationship between the bank and the customer and the customer justifiably relies on the bank for advice concerning financial matters); *Klein v. First Edina Natl Bank*, 196 N.W.2d 619 (Minn. 1972); *Denison State Bank v. Madeira*, 640 P.2d 1235 (Kan. 1982) (stating that:

> Where one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation (in essence, fiduciary) to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expedience of the bargain);

15

*Simmons v. Jenkins*, 750 P.2d 1067, 1070 (Mont. 1988) (stating that an exception to the general rule is when "the Bank is thrust beyond the simple role of creditor and into the role of an advisor" (emphasis added)); *Bank of Red Bay v. King*, 482 So.2d 274 (Ala. 1985) (stating that "a fiduciary duty may, nevertheless arise when the customer reposes trust in a bank and relies on the bank for <u>financial advice, or in other special circumstances</u>" (emphasis added)); *Teeling v. Indiana National Bank*, 436 N.E.2d 855 (Ind. 1982) (quoting *Klein* and stating that "the relationship between a bank and its customers may, in some instances, be such as to impose that kind of duty").

Vinal has also sufficiently pled that SunTrust took advantage of its position of trust to the hurt Vinal by seeking its own advantage in the transaction. The Complaint alleges that SunTrust sought to benefit itself, in satisfaction of the requirements of *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997).

In *Barger*, the plaintiff shareholders sued the corporation's accountants for alleged negligence and misrepresentations in preparing the corporation's financial statements. Id., 346 N.C. at 654-656, 488 S.E.2d at 217-218. The accountant-supplied financial statements made the shareholders unaware of the company's insolvency until they attempted to sell it. Id. In the interim, the plaintiffs relied on the financial statements in deciding to personally guarantee significant obligations of the company. Id. The North Carolina Supreme Court found that the plaintiffs

16

had not established a sufficient benefit to the accountants to satisfy the requirements of a claim for breach of fiduciary duty/constructive fraud. Id. The court stated:

> Plaintiffs contend that their forecast of evidence shows that defendants did benefit from their alleged misrepresentations regarding [the company's] financial status because they obtained the benefit of their continued relationship with the plaintiffs. This is insufficient to establish the benefit required for a claim of constructive fraud, however.

Id. at 667, 488 S.E.2d at 224. By contrast, Vinal alleges that SunTrust gained significant financial benefit by foreclosing on his properties, which is far more significant than the limited benefit of a continued banking relationship, which the *Barger* court held was insufficient.

The relationship between SunTrust and Vinal exceeded the mere lender/borrower relationship. SunTrust knew that Vinal was relying on it for advice on how to handle matured Loan 2155. SunTrust held all the cards – it knew of the Fannie Mae guideline change that would prohibit Vinal from refinancing under that program, it knew that if Vinal skipped three payments his eight loans in good standing would go into default, it knew that if these missed payments were reported to the credit bureaus his credit would be shot and he would not qualify for other refinancing programs, it knew that once he was in default, the bank could foreclose on the properties, and it knew that the bank could buy these properties at foreclosure for less than their market value and sell them at a profit. The entire

17

course of conduct by SunTrust, as pled by Vinal, is more than sufficient to withstand a Rule 12(b)(6) motion. In this case, SunTrust "figuratively [held] all the cards – all the financial power [and] technical information." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 348 (4th Cir. N.C. 1998).

SunTrust's actions in this case are precisely why the duty of loyalty exists -- to prevent the trustee from exploiting its position of power. SunTrust used its superior position to exploit Vinal's vulnerable financial position to its advantage. There is no conceivable argument that SunTrust's instructions to Vinal were in Vinal's best interest. SunTrust told Vinal to deliberately default on his mortgages, then it reneged on its promise not to report the defaults, used the fall-out – Vinal's inability to refinance – to its advantage by foreclosing on all of Vinal's properties, refusing short sale offers, and then buying the properties back at foreclosure, in two instances at prices less than the short sale offers they rejected.

Despite its less stringent pleading requirement, Vinal has pled facts sufficient that a jury could find that SunTrust owed him a fiduciary duty to act reasonably and with due care when it undertook to advise him outside the confines of the standard creditor-debtor relationship. Moreover, SunTrust clearly sought to benefit itself, and only itself, with its disregard for Vinal's interests. Vinal alleged the identity of two of the individuals at SunTrust who breached a relationship of trust and confidence, as well as the approximate dates and details of the wrongful dealings by SunTrust.

**II. The district court erred in dismissing Vinal's claims for unfair or deceptive trade practices against SunTrust because Vinal pled sufficient factual allegations to support his claim in conformance with the pleading requirements of Iqbal and Twombley.**

To state a claim under the unfair or deceptive trade practices act ("UDTPA") under N.C.G.S. §75, a plaintiff must allege (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). A banking "'practice is unfair if it offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,' and 'is considered deceptive if it has the capacity or tendency to deceive.'" *Carlson v. Branch Banking & Trust Co.*, 123 N.C. App. 306, 316, 473 S.E.2d 631, 637-38 (1996) (citations omitted). "A party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." *James R. Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (N.C. Ct. App. 2009) (quoting *McInerney v. Pinehurt Area Realty, Inc.*, 162 N.C. App. 285, 289, 590 S.E.2d 313, 316-17 (N.C. Ct. App. 2004)).

An unfair practice is

> conduct which a court of equity would consider unfair. Thus viewed, the fairness or unfairness of particular conduct is not an abstraction to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others.

19

*Harrington Manufacturing Co. v. Powell Manufacturing Co.*, 38 N.C. App. 393, 398, 248 S.E.2d 739, 744 (1978).

If a UDPTA claim is based on a party's breach of contract, the plaintiff is required to plead substantial aggravating factors to accompany the underlying breach. *Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F.Supp. 2d 664, 700 (M.D.N.C. 2011). UDPTA claims based on a theory of misrepresentation or fraud require plaintiff to show that a defendant's words or conduct possessed the tendency or capacity to mislead or create the likelihood of deception. *LFM Real Estate Ventures, LLC v. SunTrust Bank*, 2012 U.S. Dist. LEXIS 175439, 29 (W.D.N.C. De. 7, 2012).

In each case, the determination of the unfair or deceptive nature of an act or practice is fact specific and depends on the impact of the practice on the marketplace. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). For purposes of Rule 12, "'the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted.'" *Hooper v. Liberty Mut. Ins. Co.*, 84 N.C. App. 549, 551, 353 S.E.2d 248, 250 (1987).

Vinal alleges that SunTrust engaged in unfair or deceptive trade practices by failing to alert him to changes in Fannie Mae's guidelines that affected his ability to refinance, instructing him to default on his mortgages by skipping three payments at a time when he had never missed a payment nor made a late payment, representing that it would not report these missed payments and defaults to the

20

credit bureaus, then reneging on that promise, causing Vinal to be ineligible for other refinance programs, changing locks on properties he owned, including two that were occupied by bona fide tenants, and refusing to approve short-sale offers that would have mitigated Vinal's damages. "Such manipulations and assertions of influence are precisely the kind of 'inequitable assertions' of power that North Carolina deems to be unfair trade practices." *Riese*, 284 F.3d. at 540.

## **CONCLUSION**

For the reasons set forth above, Vinal requests that this Court reverse the decision of the district court dismissing Vinal's claims against SunTrust for constructive fraud and unfair or deceptive trade practices.

Respectfully submitted,

/s/ James W. Lea, III
The Lea/Schultz Law Firm
1131-B Military Cutoff Rd.
Wilmington, NC 28405
T (910) 239-5990
F (910) 239-5992
Attorney for Plaintiff-Appellant

## REQUEST FOR ORAL ARGUMENT

Appellant Vinal respectfully requests oral argument be heard in this matter because he believes it will significantly aid the Court in deciding the issues raised in this appeal.

/s/ James W. Lea, III
The Lea/Schultz Law Firm
1131-B Military Cutoff Rd.
Wilmington, NC 28405
T (910) 239-5990
F (910) 239-5992
Attorney for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify the following with respect to the foregoing Brief for Plaintiff-Appellant Peter S. Vinal:

1.  This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this Brief contains 5,835 words, excluding the parts of the Brief exempted by F. R. App. P. 32(a)((7)(B)(iii).

2.  This Brief complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportional serif typeface using Times New Roman 14 point type style.

April 28, 2014

/s/  James W. Lea, III
The Lea/Schultz Law Firm
1131-B Military Cutoff Rd.
Wilmington, NC 28405
T (910) 239-5990
F (910) 239-5992
Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this 28th day of April, 2014, filed the required copies of the foregoing Opening Brief of Appellant in the Office of the Clerk of the Court, electronically using the Court's CM/ECF system which will send notification of such filing to the following counsel, and have mailed a copy via U.S. Postal Service, First Class Mail, postage paid to:

Elizabeth C. Stone
Camden R. Webb
Williams Mullen
P.O. Box 1000
Raleigh, NC 27602

/s/James W. Lea, III
The Lea/Schultz Law Firm
1131-B Military Cutoff Rd.
Wilmington, NC 28405
T (910) 239-5990
F (910) 239-5992
Attorney for Plaintiff-Appellant