RECORD NO. 14-1233

In The

# United States Court of Appeals
### For The Fourth Circuit

## PETER S. VINAL,

*Plaintiff – Appellant*,

**v.**

## SUNTRUST MORTGAGE INCORPORATED,

*Defendant – Appellee*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT WILMINGTON**

———————

**BRIEF OF APPELLEE**

———————

Camden R. Webb
Elizabeth C. Stone
WILLIAMS MULLEN
301 Fayetteville Street, Suite 1700
Post Office Box 1000
Raleigh, North Carolina  27601
(919) 981-4000

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No.  14-1233        Caption:  Peter S. Vinal v. SunTrust Mortgage Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

SunTrust Mortgage Inc.
(name of party/amicus)


who is            Appellee            , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                    ☑YES ☐NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      SunTrust Bank, SunTrust Bank Holding Company, and SunTrust Banks, Inc.


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☑YES ☐NO
      If yes, identify all such owners:
      SunTrust Bank, Inc.


10/28/2013 SCC                        - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/Elizabeth C. Stone                          Date:    March 27, 2014

Counsel for: SunTrust Mortgage Inc.

## CERTIFICATE OF SERVICE
*****************************

I certify that on    March 27, 2014    the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

s/Elizabeth C. Stone                          March 27, 2014
(signature)                                    (date)

- 2 -

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF THE CASE ..............................................................1

STATEMENT OF FACTS ...................................................................2

SUMMARY OF ARGUMENT ..............................................................6

ARGUMENT .....................................................................................8

    I.    The District Court Correctly Held that Appellant Failed to State
        a Claim for Constructive Fraud Under North Carolina Law ...............8

    II.    The District Court Correctly Held that Appellant Failed to State
        a Claim for Unfair and Deceptive Trade Practices under
        Chapter 75 of the North Carolina General Statutes ...........................14

        A.    SunTrust did not breach any legally cognizable duty to
            Appellant .................................................................................16

        B.    Appellant is barred from asserting that SunTrust engaged
            in unfair or deceptive trade practices allegedly inducing
            him to default on his loans and otherwise "forcing" him
            into foreclosure .......................................................................18

CONCLUSION AND REQUEST FOR RELIEF...................................20

REQUEST FOR ORAL ARGUMENT .................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>CASES</u>

*Belk, Inc. v. Meyer Corp., U.S.*,
    679 F.3d 146 (4th Cir. 2012) ........................................................16

*Branch Banking & Trust Co. v. Thompson*,
    107 N.C. App. 53, 418 S.E.2d 694 (1992) .....................................9

*Camp v. Leonard*,
    133 N.C. App. 554, 515 S.E.2d 909 (1999) .................................17

*Canady v. Crestar Mort. Corp.*,
    109 F.3d 969 (4th Cir. 1997) ........................................................15

*Caper Corp. v. Wells Fargo Bank, N.A.*,
    Civil No. 7:12-CV-357-D, 2013 WL 4504450
    (E.D.N.C. Aug. 22, 2013)..............................................................12

*Dallaire v. Bank of America, N.A.*,
    738 S.E.2d 731 (N.C. App. 2012) .....................................10, 11, 13

*Devlin v. Wells Fargo Bank*,
    No 1:12-CV-388, 2014 WL 1155415 (W.D.N.C. Mar. 21, 2014)..........13, 14

*Ellis v. Louisiana-Pacific Corp.*,
    699 F.3d 778 (4th Cir. 2012) .................................................15, 16

*Hall v. Virginia*,
    385 F.3d 421 (4th Cir. 2004) ..........................................................5

*Higgins v. Spence & Spence, P.A.*,
    No. 5:07-CV-33, 2008 WL 506193 (E.D.N.C. Jan. 7, 2008).................. 17-18

*Hunter v. Guardian Life Ins. Co. of Am.*,
    162 N.C. App. 477, 593 S.E.2d 595 (2004) ...................................9

*Kelly v. Georgia-Pacific, LLC*,
    671 F. Supp. 2d 785 (E.D.N.C. 2009) ...........................................................17

*LFM Real Estate Ventures, LLC v. SunTrust Bank*,
    No. 5:11-CV-135-RLV, 2012 WL 6114242 (W.D.N.C. Dec. 7, 2012)........12

*Marshall v. Miller*,
    302 N.C. 539, 276 S.E.2d 397 (1981) ...........................................................15

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) .........................................................................14

*Mecklenburg County v. Nortel Government Solutions, Inc.*,
    No. 3:07-CV-00320-GCM, 2008 U.S. Dist. LEXIS 110381
    (W.D.N.C. Apr. 1, 2008) ................................................................................17

*Merrill Lynch Bus. Fin. Servs., Inc. v. Cobb*,
    No. 5:07-CV-129-D, 2008 U.S. Dist. LEXIS 109010
    (E.D.N.C. Mar. 18, 2008) ..............................................................................20

*Papasan v. Allain*,
    478 U.S. 265 (1986)..........................................................................................5

*Rhodes v. Jones*,
    232 N.C. 547, 61 S.E.2d 725 (1950) ...............................................................8

*Robinson v. Deutsche Bank Nat'l Trust Co.*,
    No. 5:12-CV-590, 2013 WL 1452933 (E.D.N.C. Apr. 9, 2013).......10, 11, 12

*Secretary of State for Defence v. Trimble Navigation Ltd.*,
    484 F.3d 700 (4th Cir. 2007) ...........................................................................5

*Simpson v. Fry*,
    194 N.C. 623, 140 S.E. 295 (1927) .................................................................9

*South Atlantic Ltd P'ship of Tenn., L.P. v. Riese*,
    284 F.3d 518 (4th Cir. 2002) .............................................................9, 15, 16

*Spartan Leasing, Inc. v. Pollard*,
    101 N.C. App. 450, 400 S.E.2d 476 (1991) ..................................................15

*SunTrust Mortgage, Inc. v. Busby*,
    651 F. Supp. 2d 472 (W.D.N.C. 2009) ........................................................20

*Tucker v. Boulevard at Piper Glen, LLC*,
    150 N.C. App. 150, 564 S.E.2d 248 (2002) .................................................16

## STATUTES

28 U.S.C. § 1441 (2012) .............................................................................1

28 U.S.C. § 1446 (2012) .............................................................................1

N.C. Gen. Stat. § 45-21.16 (2013) ...........................................................20

N.C. Gen. Stat. § 45-21.27 (2013) ..................................................5, 19, 20

N.C. Gen. Stat. § 45-21.29 (2013) ...........................................................19

N.C. Gen. Stat. § 45-21.29A (2013) .........................................................20

N.C. Gen. Stat. § 45-21.34 (2013) ......................................................19, 20

N.C. Gen. Stat. § 75-1.1 (2013) ...............................................................15

N.C. Gen. Stat. § 75-16 (2013) ................................................................15

N.C. Gen. Stat. § 75-16(d) (2013) ...........................................................19

## RULES

Fed. R. Civ. P. 8 .......................................................................................14

Fed. R. Civ. P. 9(b) .............................................................................13, 14

Fed. R. Civ. P. 12(b)(6)...............................................................1, 5, 13, 14

## STATEMENT OF THE CASE

This case arises out of the purchase and financing of five investment properties in New Hanover, North Carolina prior to the real estate collapse of 2008 through 2010.  Each of those properties secured promissory notes executed by the appellant, Peter S. Vinal ("Mr. Vinal" or "Appellant"), in favor of the appellee, SunTrust Mortgage, Inc. ("SunTrust").  After the housing market crashed, Mr. Vinal was unable to meet his obligations to SunTrust.  Eventually, each of Mr. Vinal's properties was sold at foreclosure, and Mr. Vinal obtained a Chapter 7 discharge of all debts relating thereto. Approximately two years later, Mr. Vinal filed suit in New Hanover County Superior Court alleging ten separate claims for relief arising out of the servicing of nine-interest only loans issued by SunTrust, SunTrust's efforts to secure and maintain the properties following Mr. Vinal's default thereunder, and SunTrust's ultimate foreclosure and acquisition of the properties.  JA 10.  On July 31, 2013, SunTrust removed the case to the United States District Court for the Eastern District of North Carolina (the "District Court") pursuant to 28 U.S.C. §§ 1441 and 1446.  JA 7.

On August 30, 2013, SunTrust and codefendants Kathy B. Bagby, Joseph C. Irving, and the Federal National Mortgage Association ("Fannie Mae") filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* JA 3 at D.E. 15, 17, 19. Appellant thereafter voluntarily dismissed

1

all claims against Fannie Mae and the individual defendants, and only proceeded
with claims for trespass against codefendant Safeguard Properties, LLC
("Safeguard") and claims for trespass, tortious interference with contract,
constructive fraud, and unfair and deceptive trade practices against SunTrust.[1]  JA
369.  On February 14, 2014, the District Court dismissed each of Appellant's
claims against SunTrust for failure to state a claim upon which relief can be
granted.  JA 380.  Appellant filed a timely notice of appeal to this Court on March
14, 2014 [JA 390], and his opening brief on April 28, 2014 ("Appellant's Br.").
As set forth therein, this appeal is limited to the District Court's dismissal of his
constructive fraud and unfair and deceptive trade practices claims against
SunTrust.  *Id.* at 1-2.

## STATEMENT OF FACTS

Between June 2005 and August 1, 2007, Mr. Vinal acquired five residential
properties in Wilmington, North Carolina.  SunTrust issued nine interest-only
loans for the purchases.  JA 10 at ¶ 6.  For each loan, Mr. Vinal executed a
promissory note whereby he agreed to repay the loan, plus interest, in full by the
maturity dates specified in the notes.  *See id.* at Exs. A-E (collectively "Notes").
Each promissory note was secured by a deed of trust authorizing SunTrust to

---

[1] Appellant voluntarily dismissed claims against SunTrust for breach of contract,
fraudulent inducement, fraudulent misrepresentation, violation of North Carolina's
Racketeer Influenced and Corrupt Organizations Act, civil conspiracy, and unjust
enrichment.  JA 369.

accelerate all indebtedness and institute foreclosure proceedings in the event of default. *Id.* (collectively the "Deeds of Trust"). The Deeds of Trust secured properties commonly known as 1153 Arboretum Drive (the "Arboretum Property"); 619 Sandfiddler Pointe (the "Sandfiddler Property"); 1233 Edgewater Club Road (the "Edgewater Property"); and 1530 and 1536 South 41st Street (collectively the "41st St. Properties").

On August 1, 2007, Mr. Vinal refinanced a note associated with the Arboretum Drive property (the "Arboretum Note"). JA 10 at ¶ 49, Ex. A. The Arboretum Note was in the original principal amount of $691,200, with interest-only payments commencing on October 1, 2007. *Id.* at ¶ 50. Under the terms of the Arboretum Note, all principal, accrued and outstanding interest, and associated fees were due and payable on or before September 1, 2008. *Id.* Mr. Vinal made payments as required under the Arboretum Note, but did not pay all outstanding amounts as of September 1, 2008 and was therefore in default. *Id.* at ¶¶ 8, 39; *id.* at Ex. A at ¶ 6(b) (nonpayment is an event of default).

Following the collapse of the real estate market in 2008, Mr. Vinal experienced a decline in income that prevented him from making timely payments on each of his loans. JA 10 at ¶ 7. In March 2009, SunTrust contacted Mr. Vinal to discuss the status of the matured Arboretum Note. *Id.* at ¶ 8. Mr. Vinal told SunTrust that due to the decline in his income, he could not continue to make the

required payments on each of his loans unless they could be refinanced. *Id.* At that time, the fair market value of each of his properties was significantly less than the amount of principal owed to SunTrust. *Id.* SunTrust informed Mr. Vinal that he was not eligible to refinance his loans under applicable Fannie Mae guidelines. *Id.*

Mr. Vinal thereafter contacted SunTrust's Loss Mitigation Department and was allegedly instructed "that he was required to default on his payments for three months in order to take advantage of several modification or refinancing programs." JA 10 at ¶ 41. Approximately three months later, Mr. Vinal defaulted on his payments. *Id.* at ¶ 42. On July 21, 2009, Mr. Vinal offered to pay $4,206.07 to SunTrust "in an attempt to ameliorate his late mortgage payments for the months of June and July of 2009." *Id.* at ¶ 43. SunTrust, however, allegedly would not accept the untimely payments and Mr. Vinal remained in default. *Id.*

Following Mr. Vinal's defaults under the terms of the Notes and Deeds of Trust, SunTrust initiated foreclosure proceedings as to each property. SunTrust also engaged the services of codefendant Safeguard Properties, LLC ("Safeguard") to secure the properties and make necessary repairs. *Id.* at ¶¶ 13, 19.

In an attempt to avoid foreclosure, Mr. Vinal placed each of the properties on the market with the intent of pursuing short-sales. JA 10 at ¶ 11. Mr. Vinal worked with members of SunTrust's Short Sale Department to ensure that SunTrust had the necessary documentation to approve or deny any offer received

4

on the Properties.  *Id.* at 12.  Several offers were made on the Arboretum, Sandfiddler, and Edgewater Properties, but the sales ultimately fell through.  *Id.* at ¶¶ 11, 32-33.; *see also* JA 289-340 (Offers to Purchase and Contract).[2]

SunTrust proceeded with foreclosure, and the 41st Street, Sandfiddler, and Edgewater Properties were sold at public auction.  *See* JA 346-350 (Reports of Foreclosure Sale).  SunTrust was the high bidder at each sale.  *Id.*  Prior to the expiration of the upset bid period established by N.C. Gen. Stat. § 45-21.27, SunTrust assigned its bids on the 41st Street Properties to codefendant Fannie Mae.  *See* JA 351-52 (Assignments of Bid ("Bid Assignments")).  Pursuant to the Bid Assignments, Fannie Mae became the lawful owner of the 41st Street Properties as of July 26, 2010 and September 7, 2010.  *Id.*

In February 2011, Mr. Vinal filed for Chapter 7 bankruptcy protection.  JA 10 at ¶ 14.  *See also In re Peter S. Vinal*, No. 11-00851-8-JRL (Bankr. E.D.N.C. 2011).  As a result of Mr. Vinal's bankruptcy, foreclosure proceedings relating to the Arboretum Property were stayed.    Mr. Vinal thereafter abandoned any claim

---

[2] In reviewing a Rule 12(b)(6) dismissal, this Court "may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic."  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).    This Court may also properly take judicial notice of matters of public record.  *See Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (citing *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)).  Accordingly, this Court may consider, or take notice of, each of the documents attached to the individual Defendants' Motion to Dismiss, which were incorporated into SunTrust's Motion to Dismiss.  *See* JA 289-365.

in the property, and it was put up for public auction and sold on September 13, 2011.  *See* JA 350, 362-63.  Mr. Vinal obtained a discharge of all debts, including any and all deficiency amounts due and owing SunTrust, on May, 16, 2011.  *See* JA 364-65 (Notice of Discharge).

On June 6, 2013, Mr. Vinal caused a Civil Summons to be Served With Order Extending Time to File Complaint to be issued by the New Hanover County Clerk of Superior Court.  This action was thereafter commenced on June 26, 2013 in the New Hanover County Superior Court and removed to this Court on July 31, 2013.  *See* JA 7.

## **SUMMARY OF ARGUMENT**

Appellant initially filed nine separate causes of action against SunTrust, five of which were voluntarily dismissed by Appellant, and four of which were dismissed by the District Court.  Appellant has not challenged the District Court's dismissal of his trespass and tortious interference with contract claims, and therefore the only claims currently before this Court are Appellant's constructive fraud and unfair and deceptive trade practices claims.

This Court should affirm the District Court's dismissal of Appellant's constructive fraud and unfair and deceptive trade practices claims because Appellant has not, and cannot, allege sufficient facts to demonstrate that these claims are plausible under North Carolina law.  Each of Appellant's claims are

premised on his contractual relationship with SunTrust and his inability to refinance nine individual loans at the height of the real estate market crash in 2009 and 2010. Specifically, Appellant contends that SunTrust conducted itself in an unfair and deceptive manner, and otherwise breached fiduciary obligations owed him, by failing to inform him of changes in Fannie Mae lending guidelines, inducing him to default on eight of his loans that were not otherwise in default, reporting those defaults to the credit bureaus, refusing to cooperate with and otherwise hindering short-sales of his properties, and ultimately foreclosing on each of his properties after his defaults remained uncured. Even if true, such allegations are insufficient to state plausible claims for relief under North Carolina law.

To state a claim for constructive fraud Appellant must establish the existence of a fiduciary relationship. Appellant contends that such a relationship exists by virtue of his long-standing banking relationship with SunTrust and SunTrust's decision to discuss refinancing options with him. North Carolina, however, does not recognize the existence of a fiduciary relationship in the context of an ordinary creditor-debtor relationship and, as the District Court correctly recognized, "in attempting to 'resolve the loan crisis,' SunTrust did not undertake to provide [Appellant] with any services beyond those inherent in the creditor-debtor

7

relationship." JA 387. As such, Appellant's constructive fraud claim was properly dismissed.

Appellant similarly fails to state a claim for relief under North Carolina's Unfair and Deceptive Trade Practices Act, which requires a plaintiff to demonstrate that a defendant engaged in unfair or deceptive conduct of an egregious nature. Appellant has failed to allege any facts demonstrating that SunTrust's response to his inability to pay was unfair, deceptive, or was otherwise "egregious." To the contrary, Appellant identifies a series of events demonstrating that SunTrust employed legitimate efforts to mitigate its losses as permitted under the terms of the Notes and Deeds of Trust. Accordingly, Appellant has failed to state a claim for which relief may be granted and this Court should uphold the District Court's dismissal of Appellant's claims.

## ARGUMENT

### I.     The District Court Correctly Held that Appellant Failed to State a Claim for Constructive Fraud Under North Carolina Law.

To state a claim for constructive fraud, a plaintiff must allege the existence of facts and circumstances "(1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950). Put simply, the plaintiff must show the existence of a fiduciary duty and a breach of

that duty, *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 482, 593

S.E.2d 595, 599 (2004), and Mr. Vinal cannot meet this threshold requirement of

establishing a fiduciary relationship.

A fiduciary relationship exists "where there has been a special confidence

reposed in one who in equity and good conscience is bound to act in good faith and

with due regard to the interests of the one reposing confidence." *Branch Banking*

*& Trust Co. v. Thompson*, 107 N.C. App. 53, 60-61, 418 S.E.2d 694, 699 (1992).

North Carolina courts, however, have been "reluctant to impose 'extracontractual

fiduciary obligations' in the context of general commercial contracts; thus, even

when parties to an arms-length transaction have reposed confidence in each other,

no fiduciary duty arises unless one party thoroughly dominates the other." *South*

*Atlantic P'ship of Tenn. L.P. v. Riese*, 284 F.3d 518, 533 (4th Cir. 2002). Indeed,

the courts have repeatedly refused to recognize the existence of a fiduciary

relationship in the context of an ordinary debtor-creditor relationship. *See*, *e.g.*,

*Simpson v. Fry*, 194 N.C. 623, 627, 140 S.E. 295, 297 (1927) ("There is no

fiduciary relation between a creditor and his debtor…Nor does the fact that the

debtor has conveyed property to a third person to secure his creditor establish any

fiduciary relation between him and such creditor."); *Thompson*, 107 N.C. App. at

60-61, 418 S.E.2d at 699 ("an ordinary debtor-creditor relationship generally does

not give rise to such a special confidence…[and does] not create a fiduciary relationship.").

Mr. Vinal argues that dismissal was not warranted under the reasoning of *Dallaire v. Bank of America, N.A.*, 738 S.E.2d 731 (N.C. App. 2012), *disc. rev. allowed*, 747 S.E.2d 535 (N.C. 2013), which recognized that in extraordinary circumstances a fiduciary relationship may exist in the context of a debtor-creditor relationship. Mr. Vinal, however, misconstrues the breadth of that decision, which remains the *only* case "where a North Carolina state court found allegations sufficient to suggest the possibility of a fiduciary relationship…between a mortgagor and a mortgagee." *Robinson v. Deutsche Bank Nat. Trust. Co.*, No. 5:12-CV-590, 2013 WL 1452933, *15 (E.D.N.C. April 9, 2013) (slip opinion).

In *Dallaire*, which is currently under review by the North Carolina Supreme Court, the Court addressed whether a fiduciary relationship arose based on the bank's representations regarding the legal effect of refinancing plaintiff's existing home loans. 738 S.E.2d at 733-34. Plaintiffs obtained a Chapter 7 discharge relieving them of personal liability for two mortgage loans held by defendant. *Id.* Defendant nonetheless offered to refinance the loans and, during negotiations, "repeatedly assured them that a new refinancing loan would receive first priority status" over another, existing mortgage. *Id.* at 733. Relying on that advice, plaintiffs refinanced their loans. When plaintiffs subsequently sold the property,

10

they discovered the refinanced loan held second priority and brought a claim

against defendant for breach of fiduciary duty. *Id.* In holding that entry of

summary judgment in defendant's favor was inappropriate, the Court of Appeals

emphasized the unique nature of the advice provided by defendant, stating:

"Specifically, a question of fact exists as to whether or not Defendant sought to

give legal advice to Plaintiffs. In either event, when a financial institution

undertakes to provide a customer with a service *beyond that inherent in the*

*creditor-debtor relationship*, it must do so reasonably and with due care." *Id.* at

735, n.5 (emphasis added).

Here, as distinguished from *Dallaire*, there are no allegations that SunTrust

sought to provide Mr. Vinal with any service beyond that inherent in the typical

creditor-debtor relationship. Mr. Vinal has not alleged, and the facts do not

support, any contention that SunTrust sought to give legal advice to Mr. Vinal,

provide any service outside of the creditor-debtor relationship, or otherwise agreed

to place Mr. Vinal's financial interests before its own. To the contrary, Mr. Vinal's

allegations establish that the parties were engaged in a series of arms-length

transactions regarding Mr. Vinal's obligations under the Notes and Deeds of Trust,

his failure to pay the Arboretum Note in full upon maturity, and the potential short-

sale of his properties. *See* JA 10 at ¶¶ 6, 8, 11, 57. As stated in *Robinson*, "the

loan modification process is an arm's length transaction between servicer and

11

borrower no less than is a home mortgage itself[,]" and "it cannot be said that the mortgagee is charged, under the law, with acting with due regard to mortgagor's interests." 2013 WL 1452933, at *16 (internal quotations omitted) ; *see also Caper Corp. v. Wells Fargo Bank, N.A.*, 2013 WL 4504450, *7-8 (E.D.N.C. Aug. 22, 2013) (slip opinion) (allegations that bank had become a "trusted advisor" over a "30 year relationship" insufficient to establish fiduciary relationship); *LFM Real Estate Ventures, LLC v. SunTrust Bank*, 2012 WL 6114242 (W.D.N.C. Dec. 7, 2012) (holding there was no fiduciary relationship where bank allegedly advised customer on how to structure a real estate development project, misrepresented the terms thereof, and refused to deal in good faith with the borrowers) .

Indeed, Mr. Vinal's sole basis for imposing fiduciary obligations on SunTrust rests on his contention that SunTrust figuratively "held all the financial cards" because it "knew" that changes in Fannie Mae guidelines would prevent Mr. Vinal from refinancing his loans, that if he skipped payments those loans would go into default and, if reported to the credit bureaus, would destroy his credit, prevent him from participating in other refinancing programs, and otherwise lead to the foreclosure of his properties.  App. Br. at 18.  In other words, Mr. Vinal contends that SunTrust's superior knowledge of real estate financing created a fiduciary relationship. This position is without merit for two reasons.  First, holding that a fiduciary relationship exists whenever a bank has superior knowledge regarding

financial regulations, terms, and procedures runs contrary to long-standing authority holding such relationships are "uncommon." *See*, *e.g.*, *Devlin v. Wells Fargo Bank*, No 1:12-CV-388, 2014 WL 1155415, *6 (W.D.N.C. March 21, 2014) (noting that "[i]t is 'uncommon' to recognize a fiduciary relationship between a lender and borrower in North Carolina."). In the vast majority of cases, the bank will always have "superior knowledge" than a borrower regarding the financial products it sells on a daily basis. Second, Mr. Vinal's contention that SunTrust had superior knowledge of the loan process and real estate finance is belied by his own allegations. Indeed, as distinguished from the husband and wife mortgagors in *Dallaire*, Mr. Vinal admittedly was a successful real estate agent, engaged in real estate speculation, and negotiated and obtained at least ten separate loans relating to the purchase of investment properties. JA 10 at ¶ 7. Mr. Vinal was well versed in the intricacies of real estate finance, and brought a wealth of knowledge to his dealings with SunTrust in 2009 and 2010. In light of these facts, Mr. Vinal has failed to allege "special circumstances" sufficient to distinguish this case from the ordinary "creditor-debtor" relationship. Accordingly, this Court should uphold the District Court's dismissal of Mr. Vinal's constructive fraud claim.[3]

---

[3] Mr. Vinal spends considerable time discussing the requirements of Rule 9(b) of the Federal Rules of Civil Procedure and argues that dismissal was improper because he allegedly satisfied those requirements. In so doing, Mr. Vinal improperly conflates Rule 9(b)'s particularity requirement with Rule 12(b)(6)'s plausibility requirement to suggest that compliance with the former automatically

## II. The District Court Correctly Held that Appellant Failed to State a Claim for Unfair and Deceptive Trade Practices under Chapter 75 of the North Carolina General Statutes.

In support of his unfair or deceptive trade practices claim, Mr. Vinal identifies an array of alleged conduct relating to his failed efforts to refinance or otherwise discharge his obligations under nine separate promissory notes, and SunTrust's response thereto. Appellant's Br. at 21-22. Such conduct runs the gamut of allegedly failing to alert Mr. Vinal "to changes in Fannie Mae's guidelines that affected his ability to refinance," unreasonably changing the locks and otherwise securing his properties, and "refusing to approve short-sale offers that would have mitigated [his] damages." *Id.* In reality, Mr. Vinal complains that SunTrust failed to fulfill obligations that it did not have and otherwise engaged in conduct that was explicitly authorized under its agreements with Mr. Vinal. As the District Court correctly recognized, such actions fall far short of "the sort of egregious conduct required to support a UDTPA claim." JA 380 at 10.

---

satisfies the latter. *See* Appellant's Br. at 12 (noting that "'[t]he Court should be hesitant to dismiss a complaint under Rule 9(b) if the Court is satisfied (1) that the defendant has been made aware of the particular circumstances for which it will have to prepare a defense…and (2) the plaintiff has substantial prediscovery evidence of those facts.'") (quoting *Devlin, supra*). Mr. Vinal offers no support for this assertion and, indeed, there is none. *See, e.g.*, *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (recognizing that when pleading fraud or mistake a party must satisfy both Rule 9(b)'s particularity requirement *and* set forth a plausible claim for relief under Rules 8 and 12(b)(6)).

Section 75-1.1 of the North Carolina General Statutes prohibits "unfair or deceptive acts or practices in or affecting commerce," and Section 75-16 creates a private right of action to enforce that prohibition. N.C. Gen. Stat. §§ 75-1.1, 75-16 (2013). To prevail on a claim for unfair or deceptive trade practices, a party must allege sufficient facts to show that the defendant committed an unfair or deceptive act or practice, in or affecting commerce, which proximately caused actual injury to the plaintiff. *See*, *e.g.*, *Spartan Leasing, Inc. v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991). As a general rule, a practice is considered "unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and it is considered deceptive if it has "the capacity or tendency to deceive." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981).

While expansive in scope, the courts have routinely cautioned that there are limits to what constitutes an unfair or deceptive trade practice under Chapter 75. Thus, it is well established that a breach of contract, even if intentional, is typically insufficient to establish a claim in the absence of "particularly egregious" conduct. *Riese*, 284 F.3d at 535-36; *Canady v. Crestar Mort. Corp.*, 109 F.3d 969, 975 (4th Cir. 1997); *see also Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) (recognizing that "it is unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most

appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations.") (quotations omitted). Indeed, even in the absence of a contractual relationship, some kind of *egregious* or *aggravating* circumstances must be alleged before Chapter 75's provisions may take effect. *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 164 (4th Cir. 2012) ("only practices involving some type of egregious or aggravating circumstances are sufficient to violate the UDTPA."); *Ellis*, 699 F.3d at 787 (same). Whether an act is sufficiently egregious or aggravating to constitute an unfair or deceptive trade practice is a question of law for the court. *See*, *e.g.*, *Riese*, 284 F.3d at 534; *Tucker v. Boulevard at Piper Glen LLC*, 150 N.C. App. 150, 153, 564 S.E.2d 248, 250 (2002).

## A.    SunTrust did not breach any legally cognizable duty to Appellant.

At its core, Mr. Vinal's Chapter 75 claim is premised on SunTrust's alleged refusal to work with Mr. Vinal to refinance or otherwise modify loans he could no longer afford, at a time when at least one of those loans was *already* in default. SunTrust, however, was under no obligation, contractual or otherwise, to modify the terms of any of its agreements with Mr. Vinal, to allow the short-sale of any of his properties, or to otherwise forego any of the contractual remedies to which it was entitled under the terms of the subject Notes and Deeds of Trust. *See* JA 29 (notifying Mr. Vinal that his loan was payable in full at maturity and that "THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT

THAT TIME.") (formatting in original).; JA 10, Exs. A-E at ¶ 7 (providing that "[SunTrust] or its agent may make reasonable entries upon and inspections of the Property."); *id.* at ¶ 9 (authorizing SunTrust to "do and pay for whatever is reasonable or appropriate to protect [its] interest in the Property and [its] rights under this Security Instrument.").

Mr. Vinal similarly cannot demonstrate that SunTrust had any obligation to preemptively inform him of changes in Fannie Mae guidelines that, when enacted, would impact his ability to refinance at some point in the future. *See Camp v. Leonard*, 133 N.C. App. 554, 560, 515 S.E.2d 909, 913 (1999) ("a lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party."). As demonstrated above and as recognized by the District Court, Mr. Vinal has not alleged, and cannot demonstrate, that SunTrust owed and breached a legally cognizable duty to Mr. Vinal sufficient to support a Chapter 75 claim. *See* JA 380 at 10.[4] Accordingly, this Court should uphold the District Court's dismissal of Mr. Vinal's Chapter 75 claim. *See Higgins v. Spence & Spence, P.A.*, No. 5:07-CV-33, 2008 WL 506193, at *15 (E.D.N.C. Jan. 7, 2008),

---

[4] To the extent this claim is premised on SunTrust's contractual rights and obligations, dismissal would also be appropriate under North Carolina's economic loss doctrine, which bars recovery of contract damages in tort. *See*, *e.g.*, *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009) (prohibiting recovery for economic loss in tort when a contract operates to allocate risk); *Meck. Cty. v. Nortel Gov't Solutions, Inc.*, 2008 U.S. Dist. LEXIS 110381 (W.D.N.C. 2008) (dismissing Chapter 75 claims pursuant to economic loss doctrine).

*sustained in part and overruled in part on other grounds by* 5:07-CV-33, 2008 WL 506187 (E.D.N.C. Feb. 21, 2008) (dismissing UDTPA claim where the plaintiff failed to allege "facts showing any conduct by the [defendants] that violated any duty they owed to plaintiff").

**B.    Appellant is barred from asserting that SunTrust engaged in unfair or deceptive trade practices allegedly inducing him to default on his loans and otherwise "forcing" him into foreclosure.**

The District Court's dismissal of Mr. Vinal's Chapter 75 claim may also be upheld on the independent ground that any such claim is barred as a result of Mr. Vinal's failure to appeal or otherwise challenge the underlying state Foreclosure Orders.  Stripped of labels and innuendo, Mr. Vinal alleges that SunTrust acted in an unfair and deceptive manner by "fraudulently" inducing him to default on his loans, obstructing and denying short-sale offers, and thereafter foreclosing on his properties.  Appellant's Br. at 20-21; JA 10 at ¶¶ 9, 12, 14, 39-44.  Any such claim, however, is barred because any contention that Mr. Vinal was not in default of his loan obligations, or that those obligations were somehow unenforceable, was conclusively determined in SunTrust's favor during the state foreclosure proceedings.  *See* JA 341-345.

In support of his claims, Mr. Vinal alleges that SunTrust made certain misrepresentations of fact and engaged in conduct with the intent of forcing each of his properties into foreclosure so that SunTrust could later sell them at a profit to

third parties. JA 10 at ¶¶ 12, 39-44. To effectuate this plan, Mr. Vinal theorizes, SunTrust induced him to default under the terms of his loans, and thereafter refused to accept payments to cure those defaults. *Id.* When Mr. Vinal sought to avoid foreclosure by pursuing several short-sale offers on his properties, SunTrust allegedly "disrupted" and "obstructed" the process by changing the locks on his properties, losing documentation relating to the short sale, and denying short sale offers for "arbitrary reasons." JA 10 at ¶¶ 12, 14, 21, 59(E). According to the allegations in the Complaint, these actions ultimately, and unlawfully, forced Mr. Vinal into foreclosure. Such allegations, if proved, would contradict specific findings of fact in the underlying state foreclosure actions and would undermine the validity of those decisions. *See* D.E. 16-3. Specifically, in accordance with N.C. Gen. Stat. § 45-21.16(d), the New Hanover County Clerk of Superior Court made findings of fact that the respective deeds of trust secured valid and enforceable debts, that Mr. Vinal was in default thereof, and that Mr. Vinal had been properly notified of the foreclosure hearings. *Id.* Mr. Vinal was obligated to raise those claims before the rights of all parties to the foreclosure became fixed pursuant to N.C. Gen. Stat. §§ 45-21.27 and 45-21.29.

Mr. Vinal, however, did not exercise his statutory right to appeal the Foreclosure Orders or otherwise challenge SunTrust's authority to foreclose on any other legal or equitable grounds as is permitted under N.C. Gen. Stat. § 45-21.34.

The properties were sold and the rights of the parties thereto became fixed upon expiration of the ten-day upset bid period established by N.C. Gen. Stat. §§ 45-21.27 and 45-21.29A.  As such, Mr. Vinal is prohibited from now asserting that he was not in default of his obligations to SunTrust, that he was not legally responsible for any such default, or that SunTrust unlawfully foreclosed on his properties based on any default allegedly "manufactured" by SunTrust.  *See SunTrust Mortg., Inc. v. Busby*, 469 F. App'x 205, 207 (4th Cir. 2012) ("To permit challenges to the validity of the default outside [the framework of N.C.G.S. §§ 45-21.16 and 45-21.34] would defeat the legislative intent behind the North Carolina statutory scheme."); *Merrill Lynch Bus. Fin. Servs., Inc. v. Cobb*, 2008 U.S. Dist. LEXIS 109010 (E.D.N.C. March 18, 2008) (same).

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons set forth hereinabove, SunTrust respectfully submits that the District Court's dismissal of Plaintiff's claims against SunTrust was legally appropriate and respectfully requests that this Court affirm judgment in SunTrust's favor.

20

## <u>REQUEST FOR ORAL ARGUMENT</u>

SunTrust respectfully submits that the issues raised in this appeal may be

appropriately decided without oral argument.

By: <u>/s/ Camden R. Webb</u>
Camden R. Webb
By: <u>/s/ Elizabeth C. Stone</u>
Elizabeth C. Stone
P.O. Box 1000
Raleigh, North Carolina 27602
Telephone: 919.981.4000
Facsimile: 919.981.4300
Email: ecstone@williamsmullen.com
Email: crwebb@williamsmullen.com
*Counsel for Plaintiff SunTrust Mortgage, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*4,946*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: May 30, 2014                                  /s/ Camden R. Webb
                                                                *Counsel for Appellee*

                                                                /s/ Elizabeth C. Stone
                                                                *Counsel for Appellee*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 30th day of May, 2014, I caused this Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

James W. Lea, III
Lea/Schultz Law Firm PC
1131-B Military Cutoff Road
Wilmington, North Carolina  28405
(910) 239-5990

*Counsel for Appellant*

I further certify that on this 30th day of May, 2014, I caused the required copies of the Brief of Appellee to be hand filed with the Clerk of the Court.

/s/ Camden R. Webb
*Counsel for Appellee*

/s/ Elizabeth C. Stone
*Counsel for Appellee*